AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |||
|---|---|---|
| BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING || Name of District Court, and/or Judge/Magistrate Location<br>**NORTHERN DISTRICT OF CALIFORNIA**<br>OAKLAND DIVISION |
| **OFFENSE CHARGED**<br>21 U.S.C. 841(a)(1), (b)(1)(C) - Possession with Intent to Distribute a Controlled Substance | ☐ Petty<br>☐ Minor<br>☐ Misdemeanor<br>☒ Felony | **DEFENDANT - U.S**<br>▶ HENRY JOVANY SEVILLA SEVILLA<br>FILED<br>AUG 07 2019<br>SUSAN Y. SOONG<br>CLERK, U.S. DISTRICT COURT<br>NORTH DISTRICT OF CALIFORNIA<br>OAKLAND OFFICE |
| PENALTY: Maximum 20 years imprisonment;<br>Maximum $1,000,000 fine;<br>Between 3 years and lifetime supervised release;<br>$100 special assessment. || **DISTRICT COURT NUMBER**<br>4-19-71192 MAG |

| **PROCEEDING** || **DEFENDANT** |
|---|---|---|
| Name of Complaintant Agency, or Person (& Title, if any)<br>DEA || **IS NOT IN CUSTODY**<br>1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____<br>2) ☐ Is a Fugitive<br>3) ☐ Is on Bail or Release from (show District) _____ |
| ☐ person is awaiting trial in another Federal or State Court, give name of court _____ |||
| ☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____ || **IS IN CUSTODY**<br>4) ☒ On this charge<br>5) ☐ On another conviction } ☐ Federal ☐ State<br>6) ☐ Awaiting trial on other charges<br>If answer to (6) is "Yes", show name of institution _____ |
| ☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:<br>☐ U.S. ATTORNEY ☐ DEFENSE | } SHOW DOCKET NO. _____ ||
| ☐ this prosecution relates to a pending case involving this same defendant | } MAGISTRATE CASE NO. _____ | Has detainer been filed? ☐ Yes ☐ No } If "Yes" give date filed _____<br>**DATE OF ARREST** ▶ Month/Day/Year _____<br>Or... if Arresting Agency & Warrant were not<br>**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____ |
| ☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under _____ |||
| Name and Office of Person Furnishing Information on this form DAVID L. ANDERSON<br>☒ U.S. Attorney ☐ Other U.S. Agency || ☐ This report amends AO 257 previously submitted |
| Name of Assistant U.S. Attorney (if assigned) SAILAJA M. PAIDIPATY |||

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:
_____

Comments:

\* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____    Before Judge: _____

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
AUG 07 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 4-19-71192 |
| HENRY JOVANY SEVILLA SEVILLA, | ) | |
| | ) | OAKLAND DIVISION  MAG |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 6, 2019__ in the county of __Alameda__ in the
__Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute a Controlled Substance |
| | Penalties: |
| | Maximum 20 years imprisonment; |
| | Maximum $1,000,000 fine; |
| | Between 3 years and lifetime supervised release; |
| | $100 special assessment. |

This criminal complaint is based on these facts:

See attached affidavit of Drug Enforcement Administration Special Agent Andrew Decker.

☑ Continued on the attached sheet.

Approved as to form _Sailaja Paidipaty by SAGA_
AUSA Sailaja Paidipaty

_Complainant's signature_

Andrew Decker, DEA Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __Aug. 6, 2019__

_Judge's signature_

City and state: __Oakland, California__

Hon. Donna M. Ryu, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Andrew Decker, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

**I.   INTRODUCTION**

1. I make this Affidavit in support of a Criminal Complaint against Henry Jovany SEVILLA SEVILLA for possession with intent to distribute controlled substances, specifically cocaine, cocaine base, methamphetamine, and fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

2. The facts set forth in this Affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents related to this investigation, communications with others who have personal knowledge of the events and the circumstances described herein, and information gained through my training and experience.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a complaint and search warrant, it does not set forth each and every fact that I, or others, have learned during the course of the investigation.

**II.   AGENT BACKGROUND**

4. I am presently employed by the DEA, San Francisco Divisional Office, as a Special Agent (SA) and have been so employed since July of 2012. I have been assigned to the Oakland Resident Office since November of 2012.

5. As a Special Agent of the DEA, I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

6. In addition to my experience as an agent with the DEA, I was a certified police officer in the State of California for more than seven years, in which I held such positions as

patrol officer, investigator, and sergeant. As part of my official duties and assignments as a California police officer, I investigated individuals involved in violation of State of California statutes to include, but not limited to, homicide, narcotic sales, sexual assault, and criminal street gang violations. During the aforementioned investigations, I prepared dozens of affidavits in support of search and arrest warrants. I have also testified as an expert in the Superior Court of California, Contra Costa County, twice in the matter of possession of marijuana for sales, four times related to possession of methamphetamine for sales, once related to the possession of cocaine base for sales, and more than four times as a gang expert related to various criminal street gangs.

       7.      Furthermore, I have conducted hundreds of probable cause arrests during the investigation of individuals involved in violation of municipal, state and federal law. During such investigations, I have interviewed arrested persons, debriefed confidential sources, conducted probable cause searches of cellular phones, executed search warrants to search and seize content within cellular phones and cellular phone records, and prepared investigations for prosecution.

       8.      I have attended several law enforcement schools and advanced officer trainings to include, but not limited to, 880 hours of California Peace Officer Standards and Training Basic Police Officer training, 550 hours of DEA Basic Agent training, 32 hours of Narcotic Highway Interdiction training, 4 hours of Complex Narcotics training, 4 hours of Marijuana Dispensary Investigation training, 4 hours of OxyContin Investigation training, 4 hours of Pharmaceutical Investigation training, 4 hours of Manufacturing Methamphetamine training, 40 hours of Clandestine Laboratory Investigations, 8 hours of Butane Honey Oil Laboratory Investigations, and 4 hours of Asset Seizure training.  I currently hold a Bachelor of Science degree in Criminal Justice Administration.

       9.      In connection with my official duties as a Special Agent for the DEA, I investigate criminal violations of the federal narcotics laws including, but not limited to, Title 21, United States Code, Sections 841 (manufacturing, distributing, possessing with intent to

manufacture, distribute or dispense a controlled substance), 843 (registrant dispensing Scheduled I or II substance outside legitimate scope of practice), 846 (attempts and conspiracy to commit aforementioned violations), and 848(engaging in a continuing criminal enterprise). As a DEA Special Agent, I have assisted in narcotics investigations that have led to the seizure of narcotics and arrests of individuals. I have discussed with numerous law enforcement officers, cooperating defendants, and sources the methods and practices used by narcotics distributors. Furthermore, I have been the case agent on two separate State of California wiretap investigations, authoring seven wiretap affidavits. These investigations resulted in the arrests of target subjects for crimes intercepted over wire communications and the seizure of controlled substances, bulk currency, vehicles equipped with hidden compartments, and firearms. I have assisted in no fewer than three other federal wiretap investigations, which also resulted in the arrest of target subjects and the seizure of controlled substances.

10. During my prior investigations, I became familiar with narcotics traffickers' methods of operation, including the manufacturing, distribution, storage, and transportation of narcotics, the collection of monies that represent the proceeds of narcotics trafficking, and money laundering. I have participated in all formal methods of investigations, including but not limited to, electronic surveillance, visual surveillance, general questioning of witnesses, search warrants, use of confidential sources, pen registers, trap and trace, and the use of undercover agents. Moreover, I have the authority to execute and serve search warrants issued under authority of the United States, pursuant to Title 21, United States Code, § 878.

11. During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including those offenses related to this current investigation. I have participated in approximately 14 investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers. These investigations have included: the use of confidential informants; undercover agents; the analysis of pen register, trap and trace, and toll records; physical surveillances; and the execution of search warrants. These investigations have also included: possession with intent to distribute and distribution of

controlled substances, the related laundering of monetary instruments, monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations have resulted in several state and federal prosecutions of individuals who have possessed or distributed controlled substances, including cocaine, heroin, methamphetamine, 3,4-Methylenedioxymethamphetamine (also known as MDMA, or Ecstasy), and Alprazolam, as well as the seizure of those illegal drugs and the proceeds from their sale.

12. I have worked with approximately eight informants/cooperators and approximately three undercover agents and have monitored meetings and consensual telephone conversations with drug dealers involving informants and undercover agents. I have participated in numerous hours of surveillance of narcotics traffickers. During these surveillances, I have personally observed narcotics transactions, counter-surveillance techniques, and the methods that narcotics traffickers use to conduct clandestine meetings.

13. I have participated in approximately five state and federal investigations in which court-authorized wire interceptions were used in narcotics and/or money laundering investigations. During these investigations, I have listened to and deciphered conversations between narcotics traffickers in which they discussed their criminal activities in coded language, the meanings of which were later corroborated by surveillance observations or defendants' statements, and I have participated in the seizure of narcotics and narcotics proceeds that resulted from the monitoring of these types of conversations.

14. In connection with these and other cases, I have conducted several follow-up investigations concerning the concealment of assets, money, bank records, etc., and the identification of co-conspirators through the use of drug ledgers, telephone records and bills, photographs, and financial records.

15. I have participated in approximately four Organized Crime Drug Enforcement Task Force (OCDETF) investigations. OCDETF is a task force comprised of multiple law enforcement agencies that jointly investigate drug trafficking organizations.

16. I have been involved in the execution of numerous state and federal narcotics-related search warrants. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by drug traffickers and trafficking organizations in their efforts to import, conceal, manufacture, and distribute controlled substances. I am familiar with the appearance of heroin, cocaine, methamphetamine, marijuana, MDMA, Oxycodone, Promethazine with Codeine, Alprazolam, and other controlled substances. I am familiar with and aware of the terminology used by narcotics traffickers concerning narcotics and narcotics dealing.

17. I have interviewed approximately 50 drug dealers, users, and confidential informants and have discussed with them the lifestyle, appearances, and habits of drug dealers and users, the use and meaning of coded language and the concealment of assets. I have become familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, pagers, coded or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

18. I have personally participated in the investigation discussed in this Affidavit. I am familiar with the facts and circumstances of the investigation through my personal participation in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement agencies, discussions with witnesses involved in the investigation, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Throughout this Affidavit, all

sentences that begin with the words "I believe" are based upon such information as well as my training and experience.

### III. APPLICABLE LAW

19. Title 21, United States Code, Section 841, makes it a crime to distribute or possess with intent to distribute a controlled substance.

### IV. FACTS ESTABLISHING PROBABLE CAUSE

20. On August 5, 2019, the Honorable Elizabeth D. Laporte, U.S. Magistrate Judge for the Norther District of California, issued a warrant to search a residence located on 62nd Avenue in Oakland (the 62nd Avenue House).[1] The following day, August 6, 2019, federal agents assisted by state officers executed the search warrant. The details regarding the warrant execution were relayed to me by DEA Special Agent Brandon C. Cahill who participated in the search. As set forth in detail below, during the execution of the warrant, agents found distribution quantities of several types of controlled substances, as well as drug trafficking paraphernalia, including packaging material, a digital scale, and cash. Many of these items were located in SEVILLA SEVILLA's bedroom. SEVILLA SEVILLA was found and detained at the scene.

21. Agents set up surveillance of the 62nd Avenue House at approximately 8:15 am. During the next three hours, agents saw SEVILLA SEVILLA enter and exit the 62nd Avenue House approximately five times through a side entrance on the north side of the residence.

22. At approximately 11:05 am, agents detained SEVILLA SEVILLA as he again came out of the side entrance to the 62nd Avenue House. At that time, agents began their search of the property. In a makeshift maintenance shed near the side entrance that SEVILLA SEVILLA had been using, agents found an audio speaker and a drawstring bag. Inside the speaker, agents recovered approximately three ounces of suspected cocaine base (also known as

---

[1] I have not included the address number in this Affidavit to avoid putting identifying information about the residence in an Affidavit that I do not seek to file under seal.

crack cocaine), which were in at least four individual plastic bags. DEA Task Force Officer ("TFO") Britt Elmore conducted a TrueNarc field test of one of the bags, which showed a presumptive positive result for cocaine base. Inside the drawstring bag, agents recovered approximately 20 bindles of suspected heroin, a single plastic bag containing approximately 1 gram of fentanyl, a bag of suspected methamphetamine, which contained numerous smaller individual baggies of suspected methamphetamine inside, and a pill bottle containing suspected cocaine base. TFO Elmore conducted TrueNarc field tests of the bag of suspected fentanyl, one of the smaller baggies of suspected methamphetamine, and the suspected cocaine base within the pill bottle. The results show a presumptive positive result for fentanyl, methamphetamine, and cocaine base, respectively.

23. Based on my training and experience, I know these are distribution quantities of each drug, not user quantities. In addition, the way in which the drugs were packaged, namely in separated plastic bags and bindles, indicates to me that the drugs had been packaged for sale. Drug distributors typically split up larger volumes of drugs into individual sale quantities. This allows them to quickly engage in street-level drug sales. In addition, the presence of numerous types of controlled substances is inconsistent individual drug use, and instead is consistent with drug distribution. Finally, the fact that the cocaine base was hidden within a speaker shows an intent to conceal the activity from others.

24. Inside the house, agents found three additional adults, two young children, and one baby. The baby was sleeping on a mattress in a room on the first floor of the home, while the other residents were on the second floor. On a second mattress in the same room where the baby was sleeping, agents found SEVILLA SEVILLA's wallet. Inside the wallet was SEVILLA SEVILLA's Honduran identification card. A few feet away from the mattress, agents recovered a pouch that contained unused Ziploc baggies, a digital scale, and a small bag of suspected cocaine base in a Ziploc bag. Next to the pouch was a chair with a backpack sitting on it. The backpack was filled with loose currency in low denominations (such as $1, $5, $10 bills). Next to the chair was a small table, which contained a bag with suspected cocaine base and a second

bag of suspected powder cocaine. TFO Elmore conducted a TrueNarc field test of both bags, which showed a positive result for cocaine base and powder cocaine, respectively. Based on my training and experience, I know that the this type of packaging material, scales and the large number of small denomination bills is evidence of drug trafficking. As noted above, the drugs in the shed were packaged in plastic bags. Based on my training and experience, I know that drug traffickers commonly use digital scales to weigh quantities of drugs while packaging the drugs for sale. Based on my training and experience, I also know that customers pay street level dealers with cash, commonly in small denomination bills.

25. Another adult resident in the 62nd Avenue House confirmed that SEVILLA SEVILLA lived in the room where agents found his wallet, drugs, and drug paraphernalia, and s/he confirmed that SEVILLA SEVILLA's mattress was the one on which agents found his wallet. This adult resident stated that s/he also slept in the same room.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

26. Based upon the information contained within this Affidavit, there is probable cause to believe that SEVILLA SEVILLA for possession with intent to distribute controlled substances, specifically cocaine, cocaine base, methamphetamine, and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

ANDREW DECKER
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on August __6__, 2019.

HON. DONNA M. RYU
United States Magistrate Judge